PEOPLE'S BANK OF EAST ORANGE v. FANCHER et al.

PACIFIC BANK OF NEW YORK v. SAME, (17 cases.)

(Supreme Court, Special Term, New York County.   November 8, 1892.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—APPOINTMENT OF RECEIVER AND INJUNCTION—WHEN GRANTED.
   Where, in proceedings on motion for an injunction and the appointment of a receiver, by general creditors of an insolvent, against his assignee and preferred creditors, it appears that a final judgment setting aside the assignment and the preferences is probable, a receiver should be appointed, and the injunction granted.

2. SAME—INTEREST OF ASSIGNEE.
   Where, in such proceedings, it appears that the assignee is the president of a bank, and that, after he was informed of the intention to assign to him, the actual assignment was held back to enable the insolvent firm to transfer to such bank its book accounts, amounting, with the preferences in the assignment itself, to much more than one third of the firm's assets, a receiver should be appointed, and defendants enjoined from proceeding under the assignment.

3. SAME—PRIOR TRANSFER TO PREFERRED CREDITOR OF SAME ASSETS.
   In such proceedings it appeared that some time prior to the transfer in question certain instruments in the nature of pledges of such book accounts to the bank as security for the payment of a specific note, but not purporting to be absolute transfers, were executed; that payments on such accounts were made to the assignors thereafter, and the money applied to their own use; that one of the assignors was a director in the bank; and that the apparent intention was that the assignors should hold and use the accounts so long as they continued business, when the transfers were to be used so that the money due on the accounts should be applied to the payment of debts due the bank. *Held*, that whether or not such transfers were fraudulent should only be determined on final hearing, but they were not sufficiently free from suspicion to warrant a refusal to appoint a receiver.

4. SAME—QUALIFICATIONS OF RECEIVER.
   In such case said assignee and bank president is not a proper person, whatever his character, to appoint as such receiver, since he cannot do his duty both to the bank and other creditors.

Action by the People's Bank of East Orange against Charles H. Fancher, as assignee, the Irving National Bank, Charles F. Mattlage, Charles Burkhalter, and John H. Burkhalter, to declare void an assignment to defendant Fancher for benefit of creditors, on the ground of un-

lawful preferences.    Also 17 like actions by the Pacific Bank of New York and other creditors against the same defendants.    Plaintiffs moved for an injunction and the appointment of a receiver.    Granted.

The defendants Charles Burkhalter and John H. Burkhalter made a general assignment for the benefit of creditors to Charles H. Fancher, who was also president of the Irving National Bank.    Charles Burkhalter was a director in the Irving National Bank, and the attorneys for the assignee were also the attorneys for the Irving National Bank.    The assignment was recorded on the 20th day of October, 1892, at 9 o'clock in the forenoon.    The liabilities were about $1,000,000, and the assets were about $350,000.    It appeared that prior to the assignment the assignors were indebted to the Irving National Bank in about the sum of $79,000, and that they had previously given to the Irving National Bank, as collateral security, assignments, which, in substance, provided that the assignors transferred to the Irving National Bank certain accounts as collateral security for certain liabilities; but the assignments provided that the assignors should have the right to collect moneys as the agents of the bank, and no notice of these assignments was given to any parties.    It further appeared that for some years past, with the knowledge and concurrence of the bank, the assignors had been in the habit of collecting the accounts thus assigned, irrespective of the assignment, and of applying the proceeds of the accounts thus collected to their own use.    After the assignment was drawn, on the afternoon of the 19th of October, 1892, and before it was executed, under the advice of counsel for the Irving National Bank and for the assignee, the assignors transferred to the Irving National Bank about $96,000, in assigned accounts.    The accounts thus assigned were made out at the store of the assignors, under the direction of the president and cashier of the Irving National Bank, who, with the counsel for the bank, remained at the store for that purpose from 6 o'clock in the evening until 3 o'clock in the morning; and after the accounts were thus assigned, the assignment, which was in the mean time held back, was executed and placed upon record, and the president of the Irving National Bank was made the assignee.    The assignment itself contained preferences amounting to about $183,000, which, under the assignment, were directed to be paid pro rata, and only to the extent of one third of the assigned estate. The plaintiffs, judgment creditors to the extent of $350,000, upon the return of the executions unsatisfied brought actions to set aside the assignment on the ground that it was fraudulent and void, and that the assignments to the Irving National Bank were part and parcel of the assignment itself; and that the accounts thus transferred to the Irving National Bank, together with the preferences created in the instrument itself, amounted to more than one third of the assigned estate; and that the assignments to the Irving National Bank were made with intent to evade the provision of the assignment act of the state of New York, which prohibits assignments in excess of one third of the actual assets of the estate.    A motion was made to remove the assignee and to appoint a receiver on the ground that the assignment was fraudulent and void.

Dill, Chandler & Seymour, for plaintiff.

Stern & Rushmore, Turner, McClure & Rolston, and Coudert Bros., for defendants Fancher, Mattlage and the Irving Nat. Bank.

Cannon & Atwater, for defendants Burkhalter.

INGRAHAM, J.    It has been most strenuously urged by the defendants in opposing this motion that the appointment of a receiver would seriously reflect upon the integrity of Mr. Fancher, the assignee, and upon the bank of which he is president, and that the court should hesitate before granting the motion when the consequences to him and the bank would be so serious.    When Mr. Fancher was informed that the firm of Burkhalter & Co. were in trouble, and would have to make an assignment, his duty as president of the bank was to endeavor to protect the institution which had intrusted him with the management of its affairs.    That he performed that duty, in view of the circumstances here disclosed, cannot be doubted.    The attack made upon his act is

that he went too far, and obtained from the debtors more than the law allows a creditor to obtain. That he acted solely to protect his bank, that what he did was under the advice of counsel for the bank, and that his sole object in what he did was to prevent loss to the bank, is clear. The question is whether what he obtained from the bank's debtor was in excess of that allowed by law, and it certainly casts no reflection upon him to say that he misapprehended the legality of the transfers that he obtained for the protection of the creditor whose interest he would be bound to protect.

The one question that I have to determine is whether, on the facts as they appear before me, a judgment setting aside the assignment and transfers to the bank, or some portions of those transfers, is probable. If, as the facts have been made to appear, it is sufficiently indicated the assignment was made with intent to hinder, delay, and defraud creditors, the continuance of a provisional remedy is justified. Babcock v. Jones, (Sup.) 17 N. Y. Supp. 68. That the actual transfers of these book accounts by the assignors to the bank made on the night of October 19th was made after the firm had determined to make an assignment, and that determination had been communicated to Mr. Fancher, is conceded; and that the actual execution of the assignment was held back until such preference could be made is clearly established; and it is not denied, as I understand it, that these transfers, including the preferences in the assignment itself, exceeded to a large amount one third of the assets of the assignors. It has been lately held by the general term of this court in the case of Abegg v. Bishop, 20 N. Y. Supp. 810, that such facts, if with intent to evade the statute, will justify a finding that the transfers and assignments were made with intent to hinder, delay, and defraud creditors, and that decision is binding upon me, and is the law until reversed. The defendants, however, attempt to justify these transfers by showing that some time prior thereto a portion of the accounts transferred to the bank on the 19th of October had been assigned to the bank as security for the indebtedness of the assignors, and at the same time a verbal agreement had been made by Burkhalter to subsequently assign other accounts, to give the bank a margin of 20 or 25 per cent. While these assignments are facts to be considered in determining the intent of the parties at the time these transfers and the general assignment were made, there are several facts in relation to them which are, to say the least, suspicious, and which might have considerable influence upon the mind of the court when these cases are tried as to the good faith of the whole transaction. One of the assignors was a director in the bank. Mr. Fancher, its president, appears to have been on personal, intimate terms with him. The instruments which transferred to the bank these accounts have not been submitted to me, but were produced on the argument of the motion. As I recollect them, they do not purport to be absolute transfers, but are in the nature of a pledge of the money due from the persons named in each of the assignments to the assignors as security for the payment of a specific note of the assignors, designated in such assignment, and held by the bank. To constitute a valid pledge, a delivery to or taking possession by the

pledgee is necessary. There was nothing of that kind done, and .it would appear ·that it was not the intention of the parties that anything of the kind should be done. The bank did not attempt to collect any of these accounts, but it would appear that, as the accounts were paid, they were paid to the assignors, and the proceeds received by them, and applied to their own use. The assignors, to. all appearances, remain the owners of the transferred accounts, as no notice to the debtor of the transfer to the bank was given. The instruments do not appear to have been intended as a chattel mortgage, and, if they had been, they would have been void as to creditors, not having been filed. As before stated, they do not purport to be absolute assignments. What was apparently intended was that the assignors should hold and use these accounts, collect them when they became due, and apply the amount collected thereon to their own use, so long as they could continue business; but, if they were unable to continue their business, then the ·transfers were to be used so that the money due on these accounts should be applied to the payment of the amounts due to the bank. A large amount of the assets of the firm, to which the creditors of a large, active business could look to the payment of their debts, was by these secret transfers withdrawn, so that, although the assignors had the apparent credit of owning their business and its assets, in reality their accounts were not part of the assets of the business. It can safely be said that, had it been known that the assignors had assigned these accounts to the bank, they would not have the same credit that they appear to have had after the transfers.

Whether such assignments, made under such circumstances, and with such intent, were not within the provisions of the statutes of fraud, as made with intent to hinder, delay, and defraud creditors, is, to say the least, a doubtful question, and one that should only be determined when the parties to it are before the court, subject to cross-examination, and where the facts are more fully disclosed than it is possible upon a motion heard on affidavits. A large portion of the property of the assigned estate consists of merchandise, upon which this plaintiff can obtain no lien by the commencement of this action, but, in order to give such lien to the plaintiff, it is necessary that the court should appoint a receiver. Kitchen v. Lowery, 127 N. Y. 53, 27 N. E. Rep. 357. If these transfers to the bank should be held to be void, the question as to what relief the creditors could obtain is not free from doubt under the decisions in this· state. Whether the assignment would be upheld, and the assignee recover from the bank the assigned accounts, and apply the proceeds to the payment of the assignors' debt, as directed by the assignment, or whether the whole transaction should be held to be void under the statute, as indicated in the· opinion of Abegg v. Bishop, supra, has not been finally settled. But I think it clear that the creditors of the assignors are entitled to have an officer of the .court vested with the property of the assignors, who will not stand in the way of a prompt application to have this property transferred to the bank applied to the payment of their debts. The duty of the assignee is to represent the creditors, and to obtain for them all of the debtor's property, to apply

to the payment of their demands. As the president of the bank, it was Mr. Fancher's duty to do all that he could to sustain the bank in its efforts to retain the accounts transferred to it, and no man should be placed in such a position that the performance of one duty would require him to be negligent in or avoid the performance of another and clearly imperative duty; and yet that is the position in which Mr. Fancher is placed if he attempts to act as assignee to recover from the bank the property transferred to it. It is no reflection upon Mr. Fancher to say that it is impossible for him to perform both of these duties, as it would be clearly impossible for any one man to perform them both.

I have been urged by counsel for the defendants that, if a receiver should be appointed, Mr. Fancher should be that receiver, but, without casting the slightest reflection upon Mr. Fancher's business ability or integrity, or the fidelity with which he has performed his duties to the bank and as assignee, these considerations show that he could not properly perform his duties as receiver and at the same time act as president of the bank. This is the first time, to my knowledge, that the court has been requested to appoint as receiver of an assigned estate a preferred creditor, the preference of whose debt it is claimed will render the assignment void; such preferred creditor being one of the parties who was instrumental in preparing the assignment and in carrying out the arrangement that is attacked. The motion must, therefore, be granted, and Mr. Henry W. Gray appointed receiver; an order to be entered in each of the actions, the order to contain a provision for a bond of $50,000, and that the proceeds of the assigned estate, exceeding $25,000, as they shall come into the hands of the receiver, be deposited with the Farmers' Loan & Trust Company, to be drawn out only upon the order of the court.